In the Matter of the Appraisal under the Act in Relation to Taxable Transfers of Property of the Property of. T. T. HILLMAN, Deceased.

EMILY S. HILLMAN, as Executrix, etc., of T. T. HILLMAN, Deceased, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

First Department, December 7, 1906.

**Tax — bonds owned by foreign corporation not taxable as property of stockholders.**

In a proceeding to assess a transfer tax it appeared that the decedent died a resident of a foreign State. At the time he was president of a foreign corporation, which had contracted with another foreign corporation to sell its property, to be paid for in the stock and bonds of the purchaser, which were to be delivered first to the selling company and subsequently divided among its stockholders. The purchasing company mortgaged its property to a New York corporation as trustee to secure its bonds, but at the time of the decedent's death no bonds had yet been issued.

*Held,* that decedent's interest in the bonds was not taxable, as they had not vested in him personally at the time of his death;

That prior to any distribution to the decedent personally as a stockholder, the bonds were to be owned by the corporation of which he was president, and that the title of said corporation could not be divested except by action of its directors, which action had not been taken;

That the property of a foreign corporation cannót be considered to be the property of its stockholders for the purpose of taxation.

APPEAL by Emily S. Hillman, as executrix, etc., of T. T. Hillman, deceased, from a decree of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 23d day of October, 1906, denying the appeal of the said executrix from an order fixing the transfer tax upon the estate of said decedent, and affirming the order fixing said tax.

*Lewis H. Freedman,* for the appellant.

*John G. Pheil,* for the respondent.

INGRAHAM, J.:

The question presented is whether 500 bonds of the Pratt Consolidated Coal Company, a foreign corporation, was property of the decedent within this State, at the time of his death. The decedent died on the 4th of August, 1905, a resident of Birmingham, Ala. Prior to his death, a contract had been entered into between two foreign corporations, the Pratt Consolidated Coal Company and the Pratt Coal Company, wherein the Consolidated Company agreed to purchase the property of the Coal Company, and in consideration therefor agreed to deliver to the Coal Company 22,000 shares of its capital stock and its bonds, secured by a mortgage, amounting $2,200,000, and the Coal Company agreed to accept said stock and bonds in payment for said property. The Consolidated Company agreed that it would " execute and deliver to the respective parties, or to whomsoever they may direct, an acknowledgment upon the part of the party of the first part (the Consolidated Company) to the respective parties of the amount of negotiable bonds to which the respective parties are entitled, and the promise and agreement on the part of the party of the first part to execute and deliver its negotiable bonds to the respective parties or to whomsoever they may direct, in the amount to which they are respectively entitled

First Department, December, 1906.      [Vol. 116.

under the terms hereof; provided however, that the party of the first part is to retain 15% of the bonds going to the respective parties until the title to the properties conveyed by the respective parties has been examined by the party of the first part, the said bonds retained to be held as security to make good any deficiency in the amount of land agreed to be conveyed by the respective parties, caused by defective titles or otherwise;" and it was further provided that the party of the first part "further agrees that when said permanent certificates of stock and said bonds are prepared, it will execute, issue and deliver permanent certificates of stock and bonds, to the respective parties hereto, or to whomsoever they may direct in the amount to which they are respectively entitled (upon the surrender to the party of the first part of the temporary certificate of stock and the promise in regard to bonds executed.)" Upon the day that this contract was executed, February 27, 1905, there was a meeting of the stockholders of the Coal Company, at which the stockholders resolved that the president and vice-president of the Coal Company be authorized and empowered, for and in the name of and in behalf of the company, to contract to sell, and to sell and convey, to the Pratt Consolidated Coal Company, all of the property of every kind and description owned by the Pratt Coal Company; and they were authorized to accept in payment for said property 22,000 shares of the capital stock of the Consolidated Company, and first mortgage bonds of the Pratt Consolidated Company in an amount aggregating $2,200,000; that the said stock and bonds were to be delivered to the president and vice-president and treasurer of the Coal Company, and after paying all indebtedness of the company the board of directors were authorized and directed to make a distribution of the remaining stock and bonds received from the Consolidated Company among the stockholders *pro rata* in proportion of the number of shares held by each. The board of directors of the Coal Company met at the office of the company on the same day and passed the same resolution that was passed by the stockholders. The directors of the Coal Company again met on the twenty-fifth day of November, after the death of the decedent, at which meeting a resolution was adopted ratifying the action of the officers of the company in distributing the bonds received from the Consolidated Company among the stock

holders and directing the officers of the company to distribute the stock of the Consolidated Company and any other bonds received from the Consolidated Company among the stockholders, *pro rata.* It further appeared that the decedent was a stockholder of the Coal Company; that after the meeting of February 27, 1905, there was no meeting of either the stockholders or the directors of the Coal Company until after the death of the decedent, and the board of directors of the Coal Company never authorized any distribution of the stock or bonds received from the Consolidated Company until the 25th day of November, 1905, and never authorized any officers or representatives of the corporation to make any distribution of the stock or bonds prior to that date.

At the time that the deed of the property of the Coal Company was delivered the Consolidated Company executed and delivered to the Coal Company a temporary certificate for 22,000 shares of stock, and an acknowledgment that it was obligated to deliver to the Coal Company its bonds amounting in the aggregate to $2,200,000, when the same was ready for delivery, less fifteen per cent. The decedent was then elected president of the Consolidated Company, and that company executed a deed of trust to the Central Trust Company of New York, trustee, conveying their property to secure the bond issue of $5,000,000. The deed of trust was executed on the 1st of April, 1905, and the bonds were dated on that date, but the bonds were not then ready for execution. The decedent, as president of the Consolidated Company, commenced to sign these bonds at Birmingham, Ala., but they were never all signed by him, and he died on the 4th day of August, 1905. The decedent never received any certificate from the Central Trust Company, or anybody else, that he was entitled to any of these bonds. A receipt of the trust company while made out to the decedent, was delivered to his executrix after his death. The indebtedness to the Coal Company was not finally adjusted until the twenty-fifth day of November, after the decedent's death, when the remaining indebtedness of the Coal Company was assumed by the Consolidated Company. The liquidation of the affairs of the Coal Company continued from the time that the Consolidated Company took the property of the Coal Company up to the twenty-fifth day of November, and even then were not entirely adjusted. It further appeared that the decedent

First Department, December, 1906. [Vol. 116.

had no right or interest in any of the stock or bonds of the Consolidated Company up to the time of his death, except so far as he was a stockholder of the Coal Company, and as such stockholder, when the Coal Company distributed its property, would be entitled to a distributive share. The real owner of the bonds when they should be executed was the Coal Company to whom they were issued under the contract by the Consolidated Company. At the time of the death of the decedent they had not been delivered to any one, for the bonds had not been executed by the obligor, the Consolidated Company. The Coal Company was entitled to receive these bonds under the contract, but before there could be any actual distribution of the assets of the Coal Company among its stockholders, some action by the directors of the company was necessary. The undisputed evidence is that after the execution of this contract on the twenty-seventh of February, there was no meeting of the directors or stockholders of the Coal Company and no actual distribution of its assets among its stockholders. Its debts were not liquidated. No distribution of its property had been attempted, and neither the act of its officers, nor of the Central Trust Company, the trustee under the bonds, could divest the Coal Company of its title to the bonds. It is certainly a novel proposition that property of a foreign corporation in this State is to be considered for the purposes of taxation as the property of the corporation's stockholders. The direction of the vice-president of the Consolidated Company to the trust company to deliver to the decedent 500,000 of the bonds of the Consolidated Company and directing that such bonds be deposited with the trust company for safe keeping in his name, and the receipt therefor sent to the Consolidated Company at Birmingham, Ala., cannot be considered as a legal disposition of the bonds which belonged to the Coal Company so that they thereby became the property of the decedent. The decedent, being the president of both companies, if he received these bonds, it would be as president of the Coal Company. The evidence is undisputed that the bonds were never actually executed during the decedent's lifetime. The instruments themselves were never in this State during the decedent's lifetime, and the decedent himself was not here at the time of his death. Upon these facts it seems to me that it is impossible to say that this right to receive these bonds of a foreign corporation, which were never

executed during the decedent's lifetime and which the decedent, a non-resident of this State was entitled to receive because he was a stockholder of another foreign corporation, was property within this State, or was subject to taxation.

I think, therefore, that the order appealed from should be reversed and the case remitted to the surrogate with direction to enter an order in conformity with this opinion.

PATTERSON, LAUGHLIN, CLARKE and SCOTT, JJ., concurred.

Order reversed and proceedings remitted to surrogate for further action. Order filed.